

# NUMBER 13-09-00006-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JAMES RANKIN ROBERTSON A/K/A
JAMES FRANKLIN ROBERTSON,                                Appellant,

v.

THE STATE OF TEXAS,                                Appellee.

### On appeal from the 24th District Court
### of Goliad County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Garza

Appellant, James Rankin Robertson a/k/a James Franklin Robertson, appeals his conviction for aggravated sexual assault, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii), (a)(2)(A), (e) (Vernon Supp. 2009). By three issues, which can be categorized as two, appellant contends that his conviction should be reversed because: (1) his retained trial counsel was ineffective; and (2) the trial court erred in admitting a

taped recording of a conversation between appellant and the alleged victim in this case. We affirm.

## I. BACKGROUND

Appellant was charged by indictment on May 30, 2008, for one count of aggravated sexual assault wherein it was alleged that appellant forced R.R., his thirteen-and-a-half year old granddaughter, to engage in oral sex with him and threatened her with a knife while telling her not to tell anyone about the incident. The case proceeded to trial, and the jury returned a guilty verdict on the underlying charge. The jury sentenced appellant to ninety-nine years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. After appellant retained new counsel, this appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, appellant contends that he was denied effective assistance because his trial counsel opened the door to damaging extraneous offense testimony. Appellant further contends that he was denied effective assistance because of his trial counsel's allegedly "outrageous" courtroom behavior.

### A.      Applicable Law

To establish ineffective assistance of counsel, appellant must show:   (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Dewberry v. State*, 4 S.W.3d 735, 757 (Tex. Crim. App. 1999) (holding that appellant must show a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt as to appellant's guilt); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). Whether this test has been met is to be judged on

2

appeal by the totality of representation, not by any isolated acts or omissions. *Jaynes*, 216 S.W.3d at 851. Appellant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if the appellant overcomes the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). Moreover, the acts or omissions that form the basis of appellant's claim of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814; *Jaynes*, 216 S.W.3d at 851. A silent record which provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance. *Thompson*, 9 S.W.3d at 813-14. To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## B.    Extraneous Offense Evidence

Appellant first complains about his trial counsel's questioning of one of appellant's friends, Don Mitchell. Mitchell testified as to appellant's demeanor and standing in the community; however, he also testified to the following:

Q: [Appellant's trial counsel]    Ever known this man to be violent?

| A: [Mitchell] | Never have I known this man to be violent. |
|---|---|
| Q: | Anything in his character that has ever indicated to you he's capable of raping anyone, much less his own granddaughter? |
| A: | Absolutely not. |

Appellant asserts that Mitchell's testimony regarding appellant's capability of raping others opened the door for the State to introduce the rebuttal testimony of Leigh Ann Soderholtz, appellant's adult daughter.[1]

Soderholtz testified that appellant sexually abused her "[m]any, many, many times" while she lived with appellant and his wife. She stated that appellant sexually abused her from when she was six or seven years old until she moved out of appellant's house when she was eighteen years old. She also testified that appellant's sexual abuse of her was frequent and involved fondling, oral sex, and an instance of sexual intercourse. Appellant's trial counsel did not cross-examine Soderholtz.

While we recognize that Soderholtz's testimony was damaging to appellant's case, trial counsel's questioning of Mitchell was not the only instance in which the door was opened for the State to submit extraneous offense evidence.[2] Appellant himself testified during the guilt-innocence phase and, in response to the State's questioning, denied ever

---

[1] Soderholtz later testified that appellant raised her for eighteen years, but he was not her biological father.

[2] Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"; however, such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." TEX. R. EVID. 404(b); *see Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) ("The issue [of permitting the introduction of extraneous offense evidence] does not necessarily turn on the type of defense presented, but on whether the extraneous offense evidence has noncharacter-conformity relevance by, for example, rebutting a defensive theory or making less probable defensive evidence that undermines an elemental fact.").

having sex with Soderholtz or sexually contacting R.R., the victim in this case.[3] *See Bass v. State,* 270 S.W.3d 557, 563 (Tex. 2008) (citing *Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005) (holding, in a prosecution for sexual assault of a child under seventeen, that defendant's sweeping direct-examination testimony denying any sexual misconduct with minors opened the door to admission of extraneous offense evidence of defendant's sexual misconduct with another minor to rebut this sweeping testimony)). Therefore, appellant's own testimony during the guilt-innocence phase belies his contention that his trial counsel's alleged wrongful questioning of Mitchell was the sole cause for opening the door to the admission of Soderholtz's rebuttal testimony. Furthermore, because the record is silent as to trial counsel's strategy, we cannot say that trial counsel's questioning of Mitchell regarding appellant's capability to rape others, his demeanor, and his standing in the community was not the result of a sound and reasonable trial strategy. *See Thompson*, 9 S.W.3d at 813-14; *Dewberry*, 4 S.W.3d at 757 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *see also Moreno v. State*, 1 S.W.3d 846, 865 (Tex. App.–Corpus Christi 1999, pet. ref'd) (noting that "we must presume that trial counsel is better positioned than the appellate court to judge the pragmatism of the particular case," and that trial counsel "made all significant decisions in the exercise of reasonable professional judgment").

Based on the foregoing, we conclude that appellant has not met his burden in overcoming the strong presumption that trial counsel provided professional and objectively reasonable assistance with respect to the questioning of Mitchell. *See Thompson*, 9

---

[3] Appellant later admitted, in an attempt to secure a reduced punishment, that he committed indecency with a child by intentionally fondling the breasts of R.R. on one occasion. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon Supp. 2009).

S.W.3d at 813; *Dewberry*, 4 S.W.3d at 757; *see also Strickland*, 466 U.S. at 684; *Jaynes*, 216 S.W.3d at 851.

## C.      Trial Counsel's Behavior at Trial

Appellant also complains about trial counsel's conduct and performance during the trial. Specifically, appellant contends that trial "counsel's courtroom performance and behavior was so deficient, no reasonable trial strategy could justify it, and his courtroom conduct was so outrageous and serious, it undermined the proper functioning of the adversarial process, deprived [a]ppellant of a fair trial, and prejudiced and harmed him."

In support of his contentions, appellant cites to portions of the record where trial counsel made various sidebar comments, in an apparent effort to get the trial court to hold him in contempt and throw him in jail in order to stop the trial. In addition, appellant argues that trial counsel provided ineffective assistance because he: (1) claimed ignorance with respect to the indictment that was being tried[4]; (2) accused the State, in open court, of lying and "vindictive prosecution"; (3) complained to the trial court about the grand jury proceedings[5]; (4) noted, in open court, that appellant was not applying for probation; (5) conducted voir dire rapidly; (6) accused the State of fabricating evidence; (7) made sidebar comments regarding the complaining witness; (8) improperly impeached a non-testifying witness; (9) accused the State and police of impropriety in his closing argument; and (10) criticized, in open court, many of the trial court's evidentiary rulings. We disagree.

Appellant has not directed us to portions of the record conclusively demonstrating

---

[4] The record reveals that appellant had several other indictments pending pertaining to the alleged sexual abuse of his children and grandchildren.

[5] In particular, appellant complains that trial counsel demonstrated his ignorance of the law by arguing to the trial court that the State had improperly brought charges against appellant to the grand jury without presenting the testimony of a fact witness.

6

that, but for trial counsel's alleged ignorance regarding the grand jury proceedings, the outcome would have been different. *See Thompson*, 9 S.W.3d at 814; *Jaynes*, 216 S.W.3d at 851; *see also Strickland*, 466 U.S. at 684; *Dewberry*, 4 S.W.3d at 757. With respect to appellant's remaining arguments regarding trial counsel's alleged ignorance of the law, it appears that trial counsel's strategy may have been to obtain jury sympathy by blaming the district attorney's office for various alleged misdeeds. Furthermore, trial counsel admitted, during one of his lengthy statements made in open court, that his behavior was designed to encourage the trial court to continue the case or order a mistrial.[6] While we do not condone the statements made by trial counsel, the record reflects that trial counsel: (1) vigorously defended appellant from the underlying charge; (2) moved for mistrial on several occasions; (3) actively participated in the trial; (4) adequately questioned witnesses; and (5) made numerous objections to the questioning of witnesses. *See Jaynes*, 216 S.W.3d at 851 (holding that we must review the totality of the representation when analyzing an ineffective assistance claim). Therefore, we cannot say that appellant has met his burden in overcoming the strong presumption that trial counsel provided professional and objectively reasonable assistance. *See Thompson*, 9 S.W.3d at 813; *Saylor*, 660 S.W.2d at 824; *see also Fuller v. State*, 224 S.W.3d 823, 828 (Tex. App.–Texarkana 2007, no pet.) ("In the absence of counsel's reasons for the challenged conduct, we will assume a strategic motivation if any can be imagined.") (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); *Newsome v. State*, 703 S.W.2d 750, 755 (Tex. App.–Houston [14th Dist.] 1985, no pet.) (holding that, if there is any basis for

___

[6] When he received an unfavorable ruling from the trial court, trial counsel repeatedly informed the trial court of his disagreement with the ruling and stated that he was not going to desist from complaining and making sidebar comments unless he was held in contempt and thrown in jail. The trial court steadfastly refused to send trial counsel to jail for contempt.

trial strategy to have been a reason for counsel's action, then further inquiry is improper). Accordingly, we overrule appellant's first issue.

### III. ADMISSION OF THE TAPED RECORDING

In his second issue, appellant argues that the trial court abused its discretion in admitting a taped recording of a conversation between appellant and R.R. Specifically, appellant contends that the recording should not have been admitted because it was illegally obtained given that R.R. lacked the capacity to consent to the recording and the record does not support the application of "vicarious-consent."[7] The State asserts that R.R., a party to the conversation in question, consented to the recording and that R.R.'s stepmother, by dropping R.R. off at the police station, vicariously consented to R.R.'s interview by law enforcement and the recording of the conversation between R.R. and appellant.

### A.    Standard of Review and Applicable Law

When reviewing a trial court's ruling to admit or exclude evidence, we give great deference to the trial court's decision and will reverse only when the record shows that the trial court abused its discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Further, we will uphold a trial court's ruling if it was correct under any theory of law applicable to the case. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). "Appellate courts will uphold a trial court's ruling on the admissibility of evidence 'as long as the trial court's ruling was at least within the zone of reasonable disagreement . . . .'" *Id.* (quoting *Montgomery*, 810 S.W.2d at 391).

---

[7] The court of criminal appeals has held that a parent may give vicarious consent to record a child's telephone conversations if the parent has a good-faith basis for believing that the recording is in the best interest of the child. *See Alameda v. State*, 235 S.W.3d 218, 223 (Tex. Crim. App. 2007) (citing *Pollock v. Pollock*, 154 F.3d 601, 608-10 (6th Cir. 1998)).

Article 38.23(a) of the code of criminal procedure states that "[n]o evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be submitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005).  Moreover, section 16.02(b) of the penal code provides that a person commits an offense if he intentionally intercepts a wire, oral, or electronic communication.  *See* TEX. PENAL CODE ANN. § 16.02(b) (Vernon Supp. 2009).

**B.      Discussion**

In arguing that the recorded conversation between appellant and R.R. was illegally obtained and therefore inadmissible, appellant does not point to, nor are we aware of, any authority that specifically holds that a minor cannot consent to the recording of his or her own conversations.[8]   *See* TEX. R. APP. P. 38.1(i); *see also* TEX. PENAL CODE ANN. § 16.02(c)(4) (providing that it is an affirmative defense to prosecution if the individual intercepting a wire, oral, or electronic communication is a party to the communication or one of the parties to the communication has given prior consent to the interception). Nevertheless, as non-constitutional error, we review the alleged erroneous admission of evidence under rule 44.2 of the Texas Rules of Appellate Procedure and disregard the error unless it affects appellant's substantial rights.  TEX. R. APP. P. 44.2; *see* TEX. R. EVID. 103(a); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).  The admission of inadmissible evidence becomes harmless error if other evidence proving the same fact is properly admitted elsewhere or comes in elsewhere without objection.  *See Brooks v.*

---

[8] R.R. testified at trial that she consented to the recording of her conversation with appellant.

9

*State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Sanchez v. State*, 269 S.W.3d 169, 172 (Tex. App.–Amarillo 2008, pet ref'd).  We conclude that error, if any, in admitting the recording is harmless because the information contained on the recording is cumulative of testimony from R.R. regarding the incident in question and appellant's admission that he had touched her inappropriately on the breast.[9]  *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (stating that "[a]n error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection").  Accordingly, we overrule appellant's second issue.

## IV. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
11th day of February, 2010.

---

[9] Though hotly contested at trial, R.R. testified that appellant:  (1) admitted to touching her and hurting her in the recording; and (2) told her, during the taped conversation, that he believed that God had forgiven him for his transgressions.